Clarence PERSAD,
as Personal Representative of the Estate of
Esther C. Persad, Deceased,
*Appellant,*

*v.*

KAISER FOUNDATION HOSPITAL, INC.,
Kaiser Foundation Health Plan of the Northwest, Inc.,
and Northwest Permanente, P.C.,
*Respondents,*

*and*

BUCK MEDICAL SERVICES, INC.,
dba Willamette Falls Ambulance Service,
*Defendant.*

(A8804 02246; CA A61939)

809 P2d 706

Gene B. Mechanic, Portland, argued the cause for appellant. With him on the briefs was Goldberg & Mechanic, Portland.

Janet M. Schroer, Portland, argued the cause for respondents. With her on the brief were David K. Miller and Schwabe, Williamson & Wyatt, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff appeals from the judgment for respondents (Kaiser) in this wrongful death action.[1] We affirm.

At 6:10 a.m. on June 4, 1987, plaintiff called the Kaiser Hospital emergency room and asked for an ambulance for his wife. She suffered from asthma and was in the midst of a severe attack. Plaintiff spoke with an emergency room nurse, Wood, who told him that an ambulance would be dispatched. After over 30 minutes had passed and no ambulance had arrived, plaintiff's wife asked him to call Kaiser again. He did and spoke with another nurse, Brown. She consulted the other emergency room personnel and, when Wood learned about the situation at 6:44 a.m., she called Buck, the ambulance company, and asked, "Where is that ambulance that I dispatched or sent out?" An ambulance was then dispatched promptly by Buck. Plaintiff's wife became unconscious before it arrived at their home and was pronounced dead on arrival at the emergency room. There was evidence that she would have survived if the ambulance had been dispatched promptly after plaintiff's first call.

Plaintiff's primary theory was that Wood had failed to call Buck in response to his first call to the emergency room and that Kaiser was responsible for her negligence. Wood's statement in her 6:44 call to Buck was the strongest evidence that she had made an earlier call for an ambulance after receiving plaintiff's first call. Wood herself had no recollection of the events, and her statement was introduced pursuant to OEC 804(3)(e) through the testimony of Brown that, after receiving plaintiff's second call,

> "I turned around and explained the situation to the nurses that were on duty there and [Wood] said—immediately got up and went to the phone and called Buck and said, 'Where is that ambulance that I dispatched or sent out?' I don't remember her exact words either, but it was an immediate reaction on her part."

Plaintiff's only assignment is that the court erred by admitting that testimony.

---

[1] Before trial, plaintiff voluntarily dismissed Buck Medical Services, Inc., (Buck) as a defendant in the action.

OEC 804(3)(e) provides that a hearsay statement by an unavailable declarant is admissible if it is

> "* * * at or near the time of the transaction by a person in a position to know the facts stated therein, acting in the person's professional capacity and in the ordinary course of professional conduct."

Wood was "unavailable" under OEC 804(1)(c), because she "[t]estifie[d] to a lack of memory of the subject matter of [the] statement."

Plaintiff makes several arguments why Wood's statement should not come within OEC 804(3)(e). We conclude that most of them do not require specific discussion. The language of the rule is clear and unambiguous, and the statement squarely meets all of its criteria for admissibility.

■ Plaintiff argues that, even if we conclude that the statement fits within the literal terms of OEC 804(3)(e), we should nevertheless hold that it is inadmissible, because, in plaintiff's view, Wood's statement is inherently self-serving and untrustworthy, and reliability and trustworthiness are the justifications for the exceptions to the hearsay rule. Plaintiff relies on *Reynoldson v. Jackson,* 275 Or 641, 552 P2d 236 (1976), and *State v. Apperson,* 85 Or App 429, 736 P2d 1026 (1987). However, in *Reynoldson,* the issue was whether a declaration against pecuniary interest was admissible, and the court based its negative answer on its conclusion that trustworthiness was the principal justification for admitting statements under the common law standards governing that particular exception to the hearsay rule. 275 Or at 645-46; *see also Timber Access Ind. v. U. S. Plywood,* 263 Or 509, 522, 503 P2d 482 (1972). Similarly, in *Apperson,* the question was whether the evidence was admissible under OEC 804(3)(f), the "residual exception," which makes reliability or trustworthiness an internal criterion for the admission of particular statements.[2]

■ By contrast, OEC 804(3)(e) comprehensively delineates the criteria for admitting the kind of statements to which it pertains. We are not at liberty to superimpose the

---

[2] OEC 804(3)(f) allows the admission of certain hearsay statements "not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness."

additional requirement that a particular statement that comes within the legislature's comprehensive definition be found independently trustworthy before it may be admitted. Trustworthiness is one of the underlying bases for the legislative decision to make the kind of statements described in OEC 804(3)(e) admissible. However, the legislature's definition of the statements and the circumstances under which they are admissible was presumably meant to assure trustworthiness and reliability categorically, rather than leaving every statement that qualifies under the rule to be separately tested against those unexpressed criteria. That there were credibility problems with Wood's hearsay statement and her inability to testify was apparent, and both parties produced much evidence and argument at trial about those problems.[3] However, the fact that the trustworthiness of the evidence was questioned does not make it inadmissible under OEC 804(3)(e).

■      Plaintiff also argues that the hearsay evidence was more prejudicial than probative and that the trial judge abused his discretion by not excluding it under OEC 403.[4] However, the evidence was "prejudicial" only in the sense that it was highly probative. It had no tendency to persuade the jury to decide the case adversely to plaintiff for reasons unrelated to the issue at hand; rather, it was the most persuasive evidence that tended to support Kaiser's theory on the precise issue that *was* at hand. That is not the kind of prejudice that OEC 403 contemplates. The trial court did not abuse its discretion.

Affirmed.

---

[3] The term "credibility" includes bases for questioning the correctness of testimony that do not reflect on the honesty of the witness. In this case, the principal thrust of plaintiff's credibility argument is that the events were painful to Wood and she "blocked them out."

[4] This argument and the one just discussed are treated jointly in plaintiff's briefs. We think that they present separate points. To the extent that plaintiff asserts that the evidence could be excluded as unfairly prejudicial *solely because* of its purported untrustworthiness, we disagree, for largely the same reasons that we concluded that its reliability is not a test of its admissibility under OEC 804(3)(e).