Argued and submitted April 18, 1996, affirmed January 29, 1997

STATE OF OREGON,
*Respondent,*

*v.*

RONALD S. SCHUTTE,
*Appellant.*

(CR2-2415; CA A84798)

932 P2d 77

Joseph J. Thalhofer and Edward L. Perkins, Judges (Pretrial Motions)

Michael W. Seidel argued the cause and filed the briefs for appellant.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

Defendant appeals his conviction, after a jury trial, for driving under the influence of intoxicants (DUII). ORS 813.010. We affirm.

During the afternoon of November 9, 1992, defendant and his companion, Bollinger, were drinking at a tavern. Around 3:00 p.m., they got into a fight with some other patrons and soon after drove to defendant's home. Officer Gregory followed defendant's car from the tavern. At defendant's home, Gregory spoke with defendant while another officer, Stone, spoke with Bollinger.[1] Gregory observed that defendant smelled strongly of alcohol and had slurred speech, bad balance, and bloodshot and watery eyes. After defendant performed field sobriety tests, Gregory arrested him for DUII. Because defendant had been injured in the fight at the tavern, Gregory took him to the hospital. At the hospital, defendant was diagnosed as having a broken right wrist and a bruised face. A hospital blood alcohol test revealed that his blood alcohol content was .20 percent.

Defendant raises three assignments of error concerning the trial court's refusal to admit evidence that defendant argues would have shown that it was Bollinger, not defendant, who was driving. Defendant first assigns error to the trial court's denial of his pretrial motion to admit an affidavit from Bollinger stating that it was Bollinger who drove from the tavern.

Before trial, Bollinger, accompanied by defendant, went to defendant's attorney's office where Bollinger signed an affidavit, which states in part:

"On November 9, 1992, I went to the Westside Club with [defendant].

"Upon leaving the establishment, we were both attacked by some people from behind. I was able to get up and help [defendant], as he was on the ground and was in a lot of pain. [Defendant] complained of his right wrist and eye hurting, and was in no shape to drive so I helped him to

---

[1] It is not clear whether Stone was in the patrol car with Gregory or whether he arrived later.

the passenger side of his car. I then got into the driver's side of his car and drove us to [defendant's] house. I parked the car in the yard, got out of the car when a police car pulled up.

"I spoke with a woman police officer and told her that I had driven the car home because [defendant] was in no shape to drive because of his injuries."

Because Bollinger had previously told defendant that he would not testify at defendant's trial, defendant's attorney also served Bollinger with a subpoena to appear at a pretrial conference. Bollinger. did not appear at the pretrial conference, and the trial court continued the subpoena.

In April 1993, due to Bollinger's previous refusal to testify and failure to appear, defendant filed a motion *in limine* seeking admission of Bollinger's affidavit on the ground that exclusion of the affidavit would violate defendant's rights under Article I, sections 10 and 11, of the Oregon Constitution, and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. After a hearing, the trial court denied the motion on the ground that defendant had not shown that Bollinger was unavailable to testify.

Defendant then attempted to locate Bollinger, but was unsuccessful. In October 1993, he filed a new motion to have Bollinger declared unavailable and admit the affidavit under OEC 804(3)(c) (statement against interest).[2] In support of his motion, defendant submitted affidavits describing Bollinger's refusal to testify, the circumstances surrounding the making of Bollinger's sworn statement and his attorney's secretary's efforts to locate Bollinger. Defendant also submitted an excerpt from Stone's police report:

---

[2] OEC 804(3) provides, in part:

"The following are not excluded by ORS 40.455 if the declarant is unavailable as a witness:

"* * * * *

"(c) A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

"I contacted [defendant's] passenger who was identified as Gary Bollinger. Bollinger was intoxicated and agitated * * *. Bollinger said that he had been drinking beer[.]"

Finally, defendant submitted an affidavit from his neighbor that stated:

"I am the next door neighbor to [defendant]. On November 9, 1992 at approximately 3:00 p.m. I was in my front yard playing with my sons. I did not see my neighbor's car pull into his driveway but I did notice the car just after it stopped. The car had not been in the driveway before. I noticed my neighbor [defendant] get out of the passenger side of the car and another man whom I do not know, getting out of the driver's side of the car.

"Very shortly thereafter I saw a police car in front of [defendant's] house across the street and I saw the police talking to [defendant] but I could not hear what they were saying. I saw [defendant] pointing to his right wrist, however. The police never talked to me."

The prosecutor objected to Bollinger's affidavit on the grounds that defendant still had not shown that Bollinger was unavailable, that Bollinger's statement was not sufficiently against his penal interest, and that there were insufficient corroborating circumstances. To rebut the neighbor's affidavit, the prosecutor, without objection, summarized Gregory's testimony from the previous hearing that he had seen defendant driving. The trial court concluded that Bollinger's affidavit was "not reliable" and denied the motion.

There are three requirements for admission of exculpatory hearsay statements under OEC 804(3)(c): (1) The declarant must be "unavailable" to testify as defined under OEC 804(1); (2) the statements must so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statements unless he or she believed them to be true (the penal interest requirement); and (3) there must be corroborating circumstances that clearly indicate the trustworthiness of the statements. OEC 804. On appeal, the state concedes that Bollinger was unavailable.

Defendant argues that the court erred in finding that the corroborating circumstances were insufficient to

establish the trustworthiness of Bollinger's statement. The state argues that we need not reach the corroboration requirement because Bollinger's affidavit is not a declaration against interest. We agree with the state.

OEC 804(3)(c) provides, in part, that a statement against penal interest is one that "so far tended to subject the declarant to * * * criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." "Whether a statement is in fact against the declarant's interest must be determined from the circumstances of each case." *Commentary to the Oregon Evidence Code*, quoted in Laird Kirkpatrick, *Oregon Evidence* 636 (2d ed 1989).

■ ■    We conclude that the circumstances here demonstrate that Bollinger's statement did not tend to subject him to criminal liability. Although his statement contains the assertion that he was driving, it does not contain any assertion that he was intoxicated or otherwise committed a crime when he allegedly drove defendant's car. Defendant argues that, to qualify as a statement against penal interest, the statement need not be a confession, but need only *tend* to subject the declarant to criminal liability. We agree that, under OEC 804(3)(c), a qualifying statement need not be a confession to a crime. Here, however, there is nothing in Bollinger's statement that could remotely "tend" to subject him to criminal liability.

■    Defendant next argues that, even if Bollinger's affidavit is not sufficient on its face, it nevertheless qualifies as a statement against interest when considered in the context of other circumstances in the case. Defendant contends that Bollinger's affidavit must be considered in conjunction with the excerpt from Stone's report, in which Stone, based on his contact with Bollinger at the scene, reported that Bollinger was intoxicated and admitted that he had been drinking beer. According to defendant, Bollinger "had to have known that by admitting to being the driver he was opening himself up to prosecution for DUII. This is so because he admitted to the police officer that he had been drinking beer and he had to have known that he was intoxicated."

We reject defendant's reasoning. Bollinger's statement was not "facially spontaneous," in the sense that it was made contemporaneously with defendant's arrest and contact with Stone. Instead, Bollinger's affidavit was made months after the event in question. There is no evidence in the record that Bollinger *knew* at the time that he signed the affidavit, some four months after the incident, that Stone had recorded in a police report either his conclusion that Bollinger was intoxicated at the scene or Bollinger's statement that he had been drinking beer. Without such evidence, there is no link between Bollinger's "admission" of driving and Stone's observations and opinion about Bollinger's intoxication. Without that link, defendant's proof was insufficient to demonstrate that, at the time Bollinger executed his affidavit, he was aware that his "admission" could subject him to prosecution for DUII. Accordingly, defendant failed to demonstrate that Bollinger's affidavit represented a statement against penal interest. *State v. Jacob,* 125 Or App 643, 647, 866 P2d 507, *rev den* 318 Or 583 (1994); *see also Reynoldson v. Jackson,* 275 Or 641, 645, 552 P2d 236 (1976). The trial court correctly refused to admit Bollinger's affidavit.

Defendant's second and third assignments of error concern the trial court's exclusion of certain testimony by defendant's expert witness. During the trial, defendant's expert testified that it would have been "very difficult, if not totally impossible," for defendant to have driven the car. The expert based his opinion on the roads defendant would have had to negotiate, witness statements, affidavits, and defendant's injuries and blood alcohol content. Defense counsel then asked the expert to describe the affidavits and statements on which he relied. When the expert began to describe Bollinger's affidavit, the prosecutor objected. The court then excused the jury. In defendant's offer of proof, the expert testified that his opinion was based, in part, on Bollinger's affidavit. The expert also testified that it was reasonable to rely on the affidavit because of corroborating circumstances, including defendant's injuries, other witness' statements, and the fact that the affidavit was sworn and notarized.

The trial court sustained the prosecutor's objection on two grounds. First, under OEC 702,[3] the court ruled that

---

[3] OEC 702 provides:

the testimony would not be helpful to the jury because most of the evidence relied on by the expert was already before the jury, and the expert was in no better position to interpret that evidence than the jury. Second, the court ruled that it was not appropriate to testify about the affidavit when it had previously been ruled inadmissible. After the court's ruling, the jury reentered the courtroom. The prosecutor then conducted a short cross-examination, and the witness was excused.

As his second assignment of error, defendant contends that the trial court erred in preventing the expert from giving his opinion as to who was the driver. Specifically, defendant asserts that the trial court ruled that the expert could not testify at all and that the court instructed the jury to disregard the testimony of the expert witness that had occurred prior to the state's objection. Defendant's argument is not supported by the record. The expert gave his opinion and the basis for that opinion without objection. The court did not instruct the jury to disregard any of that testimony, nor did the court rule that the expert could not testify. Accordingly, defendant's second assignment of error fails.

In his third assignment of error, defendant argues that the trial court erred in refusing to allow his expert to testify that he had relied on Bollinger's affidavit. The expert testified that he relied on "affidavits" and "statements." There is little likelihood that identifying an affidavit as Bollinger's, while leaving the jury to speculate as to the contents, could have affected the verdict. In the light of our disposition of plaintiff's first assignment of error, we reject defendant's third assignment.

Affirmed.

---

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."